(74 Misc. Rep. 529.)

ADAMS LAUNDRY MACHINERY CO. v. PRUNIER.

(Supreme Court, Special Term, Schenectady County. December, 1911.)

NEW TRIAL (§ 44*)—GROUNDS—MISCONDUCT OF JURY.

> In an action for the price of certain machinery and its installation, where one point in issue was whether it was so installed as to stand solid, it was reversible error for jurors to go to the premises without knowledge of the parties and examine the machinery to see if it is bolted down and talk to persons about it.

> [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 80–85; Dec. Dig. § 44.*]

Action by the Adams Laundry Machinery Company against Joseph H. Prunier. Verdict for defendant. Motion for new trial granted. See, also, 126 N. Y. Supp. 867.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William W. Morrill, for plaintiff.
Fryer & Lewis, for defendant.

VAN KIRK, J. This is a motion for a new trial because of misconduct of the jury.

The plaintiff had sold to the defendant laundry machinery to equip his plant, with an agreement to properly install it. Claiming that it was not properly installed, the defendant had refused to pay, and this action was brought to recover for the machinery and the installation of the same. In part the defense was that an engine and extractor installed by the plaintiff were improperly installed and insecurely attached to the foundations. Plaintiff's witnesses had testified that these articles had been placed upon concrete foundations and attached to the floor with iron bolts running from a board underneath the concrete through the iron plate or base and fastened with nuts. A witness had also testified that, when the machinery was taken up by the plaintiff, as it later was, these bolts were still in the floor; and another witness testified that the condition of the place in which the machinery was installed was the same to-day as it was when the machinery had been removed by the plaintiff.

Four of the jurors, during the progress of the trial, without the knowledge of either party, and evidently without any knowledge that such conduct was improper, went into the place where the machinery had been installed, and some of them examined the floor and the place where the said engine and extractor were said to have been located. In the affidavits presented by the plaintiff for the motion, it is stated that the deponent went into the cellar with three men. One of them pointed to a place on the floor and said, "That is where the engine stood." And, again, one of the three men said, "That is where the extractor stood." At a later day, two men visited the premises. One the deponent states was a juror on the trial of the action. The other man he did not know. But, in conversation, one of the men said they were jurors in the case on trial and they would like to look in the cellar and see where the machinery, which was the subject of the trial they were jurors on, stood. In the afternoon of the same day, two other men came, and one of these men felt around with a lead pencil in the holes which he saw in the concrete there and said he did not think there were any bolts in there; and one of them said, "That is just as they said." Another one said, "From the looks of that groove the thing did not stand solid."

In reply to the moving affidavits, the defendant has presented the affidavit of each of the jurors who did view the premises. In these affidavits there is no direct denial of what is stated in the plaintiff's affidavits as to what occurred while the jurors were in the cellar, but each of the jurors has stated in substance that his action as juror was not at all influenced by what he saw, and that he went to the premises to enable him to appreciate the evidence. The language in each of the jurors' affidavits is substantially the same. It is a necessary inference, also, that the jurors went to the premises to see for themselves something.

This action of the jurors in visiting the premises was plainly misconduct. In Buffalo Structural Steel Co. v. Dickinson, 98 App. Div. 358, 90 N. Y. Supp. 270, Judge McLennan holds that:

"It is clearly misconduct on the part of jurors, during the progress of a trial, of their own motion to visit and inspect premises which are the subject of the litigation. Such an examination may put them in possession of facts which, although incompetent, would have a potential influence upon their decision and the parties would have no opportunity to explain such facts or to counteract such improper influence. By such conduct the jurors are in effect obtaining evidence, the nature or importance of which it is impossible for the parties to know. A jury trial is a public proceeding, as well in respect to the production of proof as to the instruction of the jury by the judge. The parties have a right to be heard in respect to everything transacted and to bring in review all the proceedings at the trial. Watertown Bank & Loan Co. v. Mix, 51 N. Y. 558, 560."

In Consolidated Ice-Mach. Co. v. Trenton Hygeian Ice Co. (C. C.) 57 Fed. 898, in the headnote, it is said:

"In an action to recover the price of an ice plant sold, where the defense was rested largely upon the alleged poor quality of the ice produced, it was highly improper for jurors, on encountering one of defendant's ice wagons during the trial, to examine the ice and test its quality for themselves."

In the opinion, the court says:

"It is hardly necessary to say that a cause should be decided by a jury solely upon the evidence produced before it legally during the trial, in the presence of the court, and that it is highly improper for a jury, or any member of it, to acquire information or knowledge touching any issues pending in the cause in any other way."

The misconduct of the jury is admitted, but it is claimed by the defendant that such misconduct did not affect the verdict. The misconduct being shown, the presumption is that it was harmful. In 38 Cyc. on page 1824, it is said:

"So the verdict is vitiated where it clearly appears, or it can reasonably be inferred, that the unauthorized view or inspection influenced the verdict, or where the court cannot determine, with any reasonable certainty, whether the result was affected or not; under these circumstances, it will be assumed that it was."

In Matter of Vanderbilt, 127 App. Div. 408, 111 N. Y. Supp. 558, the court said:

"We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient cause for reversal if they are likely to do so."

In Thomas v. Chapman, 45 Barb. 98, where the act complained of was that an officer had made some statements to the jury, the court said:

"It is not necessary for the defendant, Chapman, to show that the verdict was in fact influenced by the statements of the officer. It is sufficient, I think, for him to show that there is reason to suspect that the statements were made, and if made that they were likely or calculated to influence the verdict."

In Watertown Bank & Loan Co. v. Mix, 51 N. Y. 558, in which the jury had received some instructions from the court, not in open

court or not in the presence of the parties, it is held that a party to an action is entitled to have all of the proceedings public, both in respect to the production of proof and to the instructions to the jury by the court, and that this right is a substantial one and is not in the discretion of the court; and that an order denying a motion for a new trial, which motion was based upon the violation of this right, is appealable to the Court of Appeals. This party, moving for a new trial because of the irregularities complained of, is not bound to show affirmatively that such communication tended to his injury.

I realize that there has been a good deal of trouble and expense connected with the trial of this case; but the right to a trial by jury in open court, where each party has full opportunity to be heard upon all matters of evidence which are brought to the attention of the jury and full opportunity to make exception or answer thereto, must be secured to each party; and, in a case like this, where the court is not able to say that the verdict was not affected by information received by the jurors, when they went to view the premises, I am with much reluctance forced to grant the motion for a new trial.

I have given close attention to the affidavits of the jurors, but they do not specifically deny any of the facts disclosed as to occurrences in the cellar when the jurors were examining the premises; and it is the most natural thing for a juror who has innocently made such a mistake to explain that such a mistake has accomplished no wrong. In Pool v. C. B. & Q. R. R. Co. (C. C.) 6 Fed. 844, the court says:

"There is no right more sacred than the right to a fair trial. There is no wrong more grievous than the negation of that right."

And, again, the court said, with reference to the affidavits of the jurors:

"Nor will it do for a moment to accept the statement of the juror that what he has said or heard has not affected or influenced his judgment. Almost any juror, when detected in such misconduct and arraigned for it, will disclaim the influence upon his own mind of what he has uttered in violation of his duty."

However honestly the juror may have tried to do so, it would be practically impossible for him to have divorced his mind from the influence which he did receive from examining the location of the machines. One of the chief points at issue was whether or not the engine and extractor jumped about on the floor while the machinery was in operation. The expression said to have been made by one of the men, "From the looks of that groove, the thing did not stand solid," which statement is not directly denied, shows that that person at least did receive an impression which bore directly upon a point seriously litigated in the case.

An order for a new trial may be presented.

Motion granted.